IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LABORERS' PENSION FUND, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| | ) | |
| v. | ) | Case No. 03 C 4259 |
| | ) | |
| | ) | |
| EXCELLENCE QUEST PAVING & | ) | HONORABLE CHARLES R. NORGLE |
| MAINTENANCE, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**OPINION AND ORDER**

CHARLES R. NORGLE, District Judge

Before the court is Plaintiffs' Motion for Summary Judgment brought pursuant to Federal Rule of Civil Procedure 56(c). For the following reasons, the court grants Plaintffs' Motion for Summary Judgment as to Count III, and denies Plaintiff's Motion as to Counts I, II, and IV.

**I. BACKGROUND**[1]

**A. Facts**

This case arises out of the alleged failure to contribute funds to an Employment Retirement Income Security Act ("ERISA") Plan. Plaintiffs, the Laborers' Pension Funds and the Laborers' Welfare Fund of the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago (the "Funds") are multi-employer benefit plans within the meaning of Sections 3(3) and 3(37) of ERISA, 29 U.S.C. §§ 1002(3) and 37(A).

---

[1] The court takes the undisputed facts from the parties' Local Rule 56.1 Statements, and notes disputed facts within the text.

1

James S. Jorgensen ("Jorgensen") is authorized by the Funds to act on its behalf in the collection of employer contributions.

Defendant Excellence Quest Paving & Maintenance ("Excellence Quest") is an Illinois business, although not incorporated under the laws of Illinois or registered with the Secretary of State's Office. Instead, Excellence Quest operates as a business within the Northern District of Illinois as an Employer as defined by Section 3(5) of ERISA. Defendant Michael Stepp ("Stepp") owns Excellence Quest as an individual proprietor. On February 23, 2002, Excellence Quest entered into a collective bargaining agreement ("CBA") with Union Local 5 and its affiliated local unions. Excellence Quest began operations before it signed the CBA, and closed its business on or about August 1, 2003.

The CBA obligates Excellence Quest to make contributions on behalf of its covered employees for pension, health and welfare benefits, as well as to submit monthly reports which identify the employees covered under the CBA, and the contributions owed to the Funds on behalf of each employee. In order to determine the amount of contributions owed to the Funds, Rocco Marcello ("Marcello"), the Funds representative, reviewed payroll records from Excellence Quest, Defendant Excellence Paving, Inc. ("Paving, Inc."), and Aura Paving ("Aura"). Marcello alleges that based on the applicable contribution rates, principal contributions owed to the Funds and to the Union for working dues amounts to $117,452.54. Marcello reached this figure by multiplying the number of unreported hours by the contribution rates established in the CBA. Defendants do not dispute this amount.

From April 2002 through August 2003, Bridget Stepp ("Mrs. Stepp"), Stepp's wife, owned and operated an unincorporated entity called Excellence Paving ("Paving"), as a sole

2

proprietorship. Paving was located at 580 Central Avenue, in University Park, Illinois. On October 4, 2002, Stepp's sister, Michelle Calleros ("Calleros"), incorporated a company called Excellence Paving, Inc. ("Paving, Inc."). The Funds allege that Calleros was aware at the time she incorporated that Mrs. Stepp operated the unincorporated Paving entitity. Paving, Inc. also operated out of 580 Central Avenue, in University Park.

The Funds claim that Paving performed asphalt installation and considered itself a non-union company. Furthermore, the Funds allege that when general contractors asked for a company that was signatory to the CBA, Mrs. Stepp arranged for Excellence Quest to perform the work. General contractors utilized Paving or Paving, Inc. when a job did not require union membership. According to the Funds, Stepp hired and supervised employees performing work for Paving.

Then, on January 10, 2003, Stepp and Calleros signed an Independent Contractor Agreement, which provided for Paving, Inc. to subcontract work to Excellence Quest. Pursuant to this agreement, Excellence Quest would maintain all the books and records on each job. However, Stepp states that no invoices were kept when projects were completed. While Paving, Inc. claims it was not a union company, customers were told that union labor could be provided by Paving, Inc. subcontracting work to Excellence Quest. The Funds allege that on several occasions, Paving, Inc. made payments to Stepp without maintaining records which reflected the purpose of the payments.

The Funds further allege that in April 2004 Excellence Quest purchased equipment and vehicles, secured by a note through First Midwest Bank, and executed by Stepp and Excellence Quest. Additionally, Case Credit loaned Excellence Quest funds to purchase various other

machinery. Paving, Inc. submitted a payment of $4,000 to Case Credit for the balance owed by Excellence Quest. Also, equipment registered to Paving had been used by both Paving and Excellence Quest for job assignments. All the machinery used by Excellence Quest, Paving, and Paving, Inc. was stored at the 580 Central Street address. In June 2004, Paving, Inc. changed its name to Aura. Calleros is the sole shareholder and President of Aura, and states that Aura is the same company as Paving, Inc. The Funds allege that Paving, Inc. changed its name to Aura to avoid creditors and payments to the pension funds.

## B. Procedural History

On May 13, 2004, Region 13 of the National Labor Relations Board ("NLRB") dismissed a charge filed by Paving, Inc. against Laborer's Union Local 5, wherein Paving, Inc. claimed that it was a separate entity from Excellence Quest. The specific charge brought by Paving, Inc. centered around whether the Union's picketing of Excellence Quest was an unlawful secondary activity. The NLRB dismissed Paving, Inc.'s charge, finding that the evidence showed that Paving, Inc. and Excellence Quest operated as a single integrated enterprise and/or that Paving, Inc. was the alter-ego of Excellence Quest.

Then, on September 8, 2004, the Funds filed its First Amended Complaint in the Northern District of Illinois. The Funds allege claims against Excellence Quest, Paving, and Stepp for delinquent contributions under ERISA. Additionally, the Funds allege that Paving is liable as a single employer with an alter-ego of Excellence Quest, that Paving, Inc. is liable for Paving's debts, that Paving is the successor of Excellence Quest, and that Aura is liable as the alter-ego of Excellence Quest or Paving.

On September 7, 2006, the Funds filed its Motion for Summary Judgment. Defendants

4

Responded on October 13, 2006, and on November 13, 2006, the Funds filed its Reply. The Motion for Summary Judgment is fully briefed and before the court.

## II. DISCUSSION

### A. Standard of Review

Summary judgment is permissible when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The nonmoving party cannot rest on the pleadings alone, but must identify specific facts, see Heft v. Moore, 351 F.3d 278, 283 (7th Cir. 2003), that raise more than a mere scintilla of evidence to show a genuine triable issue of material fact. See Szymanski v. Rite-Way Lawn Maintenance Co., 231 F.3d 360, 364 (7th Cir. 2000); see also Vukadinovich v. Bd. of Sch. Tr.'s of North Newton School, 278 F.3d 693, 699 (7th Cir. 2002).

In deciding a motion for summary judgment, the court can only consider evidence that would be admissible at trial under the Federal Rules of Evidence. See Stinnett v. Iron Works Gym/Executive Health Spa, Inc., 301 F.3d 610, 613 (7th Cir. 2002). The court views the record and all reasonable inferences drawn therefrom in the light most favorable to the non-moving party. See FED. R. CIV. P. 56(c); see also Koszola v. Bd. of Educ. of City of Chicago, 385 F.3d 1104, 1108 (7th Cir. 2004). "In the light most favorable" simply means that summary judgment is not appropriate if the court must make "a choice of inferences." See United States v. Diebold, Inc., 369 U.S. 654, 655 (1962); see also First Nat'l Bank of Ariz. v. Cities Service Co., 391 U.S. 253, 280 (1968); Spiegla v. Hall, 371 F.3d 928, 935 (7th Cir. 2004). The choice between reasonable inferences from facts is a jury function. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

When a party moves for summary judgment, the court must view the record and all inferences in a light most favorable to the non-moving party. Ameritech Benefit Plan Comm. v. Communication Workers of Am., 220 F.3d 814, 821 (7th Cir. 2000). However, the inferences construed in the non-moving party's favor must be drawn from specific facts identified in the record that support that party's position. See Szymanski, 231 F.3d at 364. Under this standard, "[c]onclusory allegations alone cannot defeat a motion for summary judgment." Thomas v. Christ Hospital and Medical Center, 328 F.3d 890, 892-93 (7th Cir. 2003) (citing Lujan v. Nat'l Wildlife Federation, 497 U.S. 871, 888-89 (1990)).

## B. The Funds' Motion for Summary Judgment

### 1. Arbitration is not proper in this case

As a preliminary matter, the court notes that on March 3, 2007, it asked the parties to brief the issue of whether this case should be dismissed for failure to arbitrate. On April 25, 2007, the Funds submitted a seven-page memorandum with four Exhibits, including a complete copy of the CBA. Defendants did not file a brief in accordance with the court's March 3 Order. The court accepts the arguments set forth in the Funds' brief, and finds that the issues presented in this motion for summary judgment are separate and distinct from the issues covered in the parties' CBA.

### 2. Paving, Inc. is liable for contributions owed by Excellence Quest

In Count III of the complaint, the Funds allege that "Paving is liable as a single employer with and/or an alter-ego of Excellence Quest and that Paving is a successor of Excellence Quest."

Am. Compl., ¶ 22.² As such, the Funds claim that Paving, Inc. is liable for contributions owed by Excellence Quest to the benefit plans. Id., ¶ 25.

The NLRB has previously found that Paving, Inc. and Excellence Quest operated as a single integrated enterprise. Specifically, the NLRB stated

> You have alleged that the Union engaged in unlawful secondary activity by picketing your business over a dispute with another company, Excellence Quest Paving & Maintenance. However, the evidence shows that Excellence Paving and Excellence Quest Paving & Maintenance operated as a single integrated enterprise and/or alter ego of Excellence Quest, thus privileging the Union's picketing for unpaid fringe benefit contributions.

Pl.'s Stmt. of Mat. Facts, Ex. 10. The NLRB's Office of Appeals affirmed the regional decision on December 2, 2004. Specifically, the Office of Appeals found that "there was insufficient evidence to establish that the two companies operated on a strictly arms-length basis." Id., Ex. 11.

The court finds sufficient evidence in the record to support the NLRB's decision. First, the work allocated between the two companies depended on whether the specific job required a union contract. For example, Paving, Inc. assigned work to Excellence Quest when work needed completion by a company that was a signatory to the Union contract. Paving, Inc. and Excellence Quest did not keep invoices which showed the finances that were shared between the two companies for such jobs. Furthermore, Paving, Inc. and Excellence Quest shared employees. Paving, Inc. hired employees that worked for Excellence Quest to work on certain jobs, as well

---

²The Amended Complaint states that "Excellence Paving and Excellence Quest are a single employer, and/or alter-ego," however, the Funds' Statement of Material Facts allege that "Excellence Quest is a single integrated enterprise with an alter-ego of Excellence Paving, Inc." Stmt. of Mat. Facts, ¶ 28.

7

as made payments for, and utilized, equipment purchased by Excellence Quest. No written loan agreements existed between the companies for the use of machinery or the repayment of loans. See Pl.'s Stmt. of Mat. Facts, ¶¶ 27, 41, 43, 51.

Second, both companies used the same equipment to perform work, and both Excellence Quest and Paving, Inc. made payments for loans secured by the equipment. Excellence Quest also loaned Paving $60,000.00 without documentation of the terms of the loan. See Pl.'s Stmt. of Mat. Facts, ¶ 33, Ex. 6. Based on this evidence submitted by the Funds, and the fact that the NLRB reviewed the same evidence and found that Excellence Quest and Paving, Inc. acted as a single company, the court also finds that these two companies operated as a single enterprise. See Central States Pension Fund v. Sloan, 902 F.2d 593, 596-97 (7th Cir. 1990). As such, Paving, Inc. is liable for contributions owed by Excellence Quest. Summary Judgment is therefore proper as to Count III of the Amended Complaint.

### 3. Genuine issues of fact exist on the remaining counts

In the remaining counts, the Funds allege that Stepp and Excellence Quest are delinquent in their contributions to the benefit funds as well as union dues, that Paving, Inc. is liable for debts incurred by Paving, and that Aura is the alter-ego of Excellence Quest and Paving, and therefore is liable for Excellence Quest's and Paving, Inc.'s contributions to the funds. See Am. Compl., ¶¶ 1, 18, 27.

A court should examine three factors when analyzing whether an alter-ego relationship exists. These factors are: "(1) the amount of respect given to separate corporate identities; (2) the fraudulent intent involved; and (3) the degree of injustice the parties would suffer by respecting

the corporate form." Central States Pension Fund v. Central Transport, Inc., 85 F.3d 1282, 1288 (7th Cir. 1996).

With respect to the first factor, there is still a genuine issue of fact as to whether Paving, Inc. is liable for debts incurred of the previously unincorporated Paving. The Funds have presented no evidence to show that Calleros, who owned Paving, Inc., held herself out and acted as Paving's president or owner, or exerted any managerial authority over Paving. Moreover, Calleros was not even the owner of Paving; Mrs. Stepp held that designation. The Funds allege that Calleros knew that Paving, Inc. had not paid the required contributions on behalf of employees doing work under the CBA. However, this knowledge alone does not establish that Calleros, as owner of Paving, Inc. did not respect the separate corporate identities of her company and Paving.

Nor have the Funds established that Paving, Paving, Inc. and Excellence Quest operated as a single employer. While Calleros was the sole owner of Paving, Inc., Stepp and his wife independently owned Excellence Quest and Paving. Even though they were married, there is no evidence in the record to demonstrate that the Stepps had common ownership of their companies. A reasonable jury may find that Calleros was not affiliated with the unincorporated Paving, or that the Stepps owned their respective companies independent of one another, without any interaction with Paving, Inc.

Under the second factor, the fraudulent intent involved, the Funds argue that the Defendant companies created an alter-ego scenario with one another to avoid payments to the benefit funds. See Am. Compl., ¶¶ 29-30; Pl.'s Mot. for Summ. J., at 12. While the court has already found that Paving, Inc. is liable for contributions owed by Excellence Quest, an issue still

9

remains as to whether Aura and Paving are liable for contributions to the pension funds. The Funds state that Defendants formed Aura "because Excellence Paving's creditors were looking to Excellence Paving, Inc. for payment." Pl.'s Stmt. of Mat. Facts, ¶ 63.

Unlawful motive or intent are "critical inquiries in an alter-ego analysis." Central States Pension Fund, 85 F.3d at 1288; see also Architectural Iron Workers Local No. 63 v. United Contractors, Inc., 46 F.Supp.2d 769, 787 (N.D. Ill. 1999). The court is "leary of resolving issues involving state of mind on summary judgment." Ashman v. Barrows, 438 F.3d 781, 784 (7th Cir. 2006). "Summary judgment is notoriously inappropriate for determination of claims in which issues of intent, good faith, and other subjective feelings play dominant roles." Id. (citing Pfizer, Inc. v. Int'l Rectifier Corp., 538 F.3d 180, 183 (8th Cir. 1976)).

The third factor deals with the injustice the parties would suffer by respecting the corporate form. See Central States Pension Fund, 85 F.3d at 1288. However, at this stage in the litigation, questions of fact still remain as to whether the Defendant corporations are in fact, alter-egos of one another. Therefore, it is not possible to discern what, if any, injustice the Funds may suffer if the court were to find that Paving, Paving, Inc. and Excellence Quest were not alter-egos of one another.

The court would be forced to make a choice of inferences of the Stepps' or Calleros's intent or frame of mind concerning the corporate relationship between Excellence Quest, Paving, Paving, Inc., and Aura. Additional genuine issues of fact remain with regards to the claim of an alter-ego relationship between the companies, and as a result, summary judgment is inappropriate as to those issues raised in Counts I, II, and IV.

## III. CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Summary Judgment is granted as to Count III, and denied as to Counts I, II, and IV.

IT IS SO ORDERED.

ENTER:

*Charles R. Norgle*

CHARLES RONALD NORGLE, Judge

United States District Court

DATED: 10/31/07